Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY CHEUNG, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SHUTTERFLY, INC., RYAN O'HARA, THOMAS D. HUGHES, WILL LANSING, EVA MANOLIS, ANN MATHER, ELIZABETH RAFAEL, ELIZABETH SARTAIN, H. TAYLOE STANSBURY, BRIAN SWETTE, and MICHAEL ZEISSER, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Andy Cheung ("Plaintiff"), by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is a class action brought by Plaintiff on behalf of himself and the public stockholders of Shutterfly, Inc. ("Shutterfly" or the "Company") against Shutterfly and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Shutterfly will be acquired by affiliates of Apollo Global Management, LLC, Photo Holdings, LLC and Photo Holdings Merger Sub, Inc. (collectively, "Apollo") (the "Proposed Transaction").

2. On June 10, 2019, Shutterfly and Apollo issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Shutterfly to Apollo. Under the terms of the Merger Agreement, Shutterfly stockholders will be entitled to receive $51.00 per share in cash for each Shutterfly share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $2.7 billion.

3. On July 30, 2019, Shutterfly filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Shutterfly stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Shutterfly's financial projections, relied upon by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in its valuation analyses; (ii) the valuation analyses prepared by Morgan Stanley in connection with the rendering of its fairness opinion; and (ii) Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Shutterfly stockholders need such material information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

4. In short, unless remedied, Shutterfly's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Shutterfly is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Shutterfly.

9. Defendant Shutterfly is a Delaware corporation with its principal executive offices located at 2800 Bridge Parkway, Redwood City, California 94065. Shutterfly's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "SFLY."

10. Defendant Ryan O'Hara ("O'Hara") is President, Chief Executive Officer ("CEO"), and a director of the Company effective June 24, 2019.

11. Defendant Thomas D. Hughes ("Hughes") has served as a director of the Company since 2015.

12. Defendant Will Lansing ("Lansing") is Chairman of the Board and has served as a director of the Company since 2017.

13. Defendant Eva Manolis ("Manolis") has served as a director of the Company since 2016.

14. Defendant Ann Mather ("Mather") has served as a director of the Company since 2013.

15. Defendant Elizabeth Rafael ("Rafael") has served as a director of the Company since 2016.

16. Defendant Elizabeth Sartain ("Sartain") has served as a director of the Company since 2016.

17. Defendant H. Tayloe Stansbury ("Stansbury") has served as a director of the Company since 2016.

18. Defendant Brian Swette ("Swette") has served as a director of the Company since 2009.

19. Defendant Michael Zeisser ("Zeisser") has served as a director of the Company since 2013.

20. Defendants identified in paragraphs 10-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Apollo is a is a leading global alternative investment manager with offices in New York, Los Angeles, San Diego, Houston, Bethesda, London, Frankfurt, Madrid, Luxembourg, Mumbai, Delhi, Singapore, Hong Kong, Shanghai and Tokyo. As of March 31, 2019, Apollo had assets under management of approximately $303 billion in private equity, credit and real assets funds.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Shutterfly common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of July 26, 2019, there were 34,396,897 shares of Shutterfly common stock outstanding. All members of the Class may be identified from records maintained by Shutterfly or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

14a-9 promulgated thereunder;

(b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

28. Founded in 1999, Shutterfly is a leading retailer and manufacturing platform for personalized products and communications. The Company focuses on helping consumers manage their memories through the medium of photography.

29. The Company has three divisions: Shutterfly Consumer, Lifetouch, and Shutterfly Business Solutions. The Shutterfly Consumer segment provides products, such as portraits, cards and stationery items, professionally-bound photo books and year books, personalized gifts and home décor products, and calendars and prints, as well as mugs, ornaments, candles, pillows, and blankets through the Shutterfly, Tiny Prints, and Groovebook domains. The Shutterfly Consumer segment

also rents photographic and video equipment under the BorrowLenses brand. The Lifetouch segment offers photography services for schools, preschools, and retail stores under the JCPenney portrait brand at approximately 400 retail studios, as well as churches and other groups. The Shutterfly Business Solutions provides direct marketing and other end-consumer communications, as well as just-in-time and inventory free printing services.

30. On June 10, 2019, Shutterfly and Apollo executed the Merger Agreement.

31. Following execution of the Merger Agreement, Shutterfly and Apollo issued a joint press release announcing the Proposed Transaction, which stated, in relevant part:

> REDWOOD CITY, Calif.--(BUSINESS WIRE)--Jun. 10, 2019-- Shutterfly, Inc. (Nasdaq: SFLY) ("Shutterfly" or the "Company"), a leading retailer and manufacturing platform dedicated to helping capture, preserve, and share life's important moments, today announced that it has entered into a definitive agreement with affiliates of certain funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, LLC (together with its consolidated subsidiaries, "Apollo") (NYSE: APO), a leading global alternative investment manager, pursuant to which the Apollo Funds will acquire all the outstanding shares of Shutterfly for $51.00 per share in cash, or enterprise value of approximately $2.7 billion.
>
> The $51.00 per share cash consideration represents a premium of 31% when compared to Shutterfly's unaffected closing stock price of $38.91 on April 23, 2019, the last trading day before a media report was published speculating that Apollo Funds were considering a bid for the Company. The Shutterfly Board of Directors unanimously approved the agreement with the Apollo Funds and recommends that Shutterfly stockholders vote in favor of the transaction.
>
> "Earlier this year, Shutterfly announced the formation of a Strategic Review Committee to continue the Board of Directors' ongoing review of strategic alternatives for the Company," said William Lansing, Shutterfly's Chairman of the Board. "We ran a broad and comprehensive process, engaging with a significant number of potential buyers, and are pleased that the process culminated in a transaction that maximizes value for Shutterfly stockholders. We look forward to working closely with Apollo as we continue to build a compelling service that enables deeper, more personal relationships for our customers, and to advance our digital and manufacturing capabilities to support sustainable growth."
>
> "Shutterfly has cultivated a deep connection with customers through its three divisions, Shutterfly Consumer, Shutterfly Business Solutions and Lifetouch, each of which we view as exceptional platforms with leading positions in their respective segments," said David Sambur, Senior Partner at Apollo. "At a time when billions of photos are taken every day, Shutterfly has led the charge as a pioneer of personalized

photo products and school photography, helping consumers capture, preserve and share life's most important moments. We are excited to work with Shutterfly's leadership and talented team of dedicated employees to grow each of the businesses and further enhance customer relationships across both Shutterfly and Lifetouch."

Lansing continued, "This transaction is a testament to our outstanding team of talented employees and the company they have built. What began as a digital photo printing company is now a large and diversified business that has successfully evolved with our customers. As we enter this exciting new chapter for Shutterfly, Apollo is an ideal strategic partner, as they will provide additional resources and industry knowledge while we continue to work on our important business initiatives."

In a separate press release issued today, Shutterfly announced the appointment of Ryan O'Hara as its President and Chief Executive Officer, effective June 24, 2019.

**Insiders' Interests in the Proposed Transaction**

32.     Shutterfly insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Shutterfly.

33.     Notably, Shutterfly directors and executive officers stand to reap substantial financial benefits for securing the deal with Apollo.  According to the Merger Agreement, outstanding and unvested restricted stock units ("RSUs") held by non-employee directors will accelerate and become fully vested.  Upon completion of the Proposed Transaction, Shutterfly's non-employee directors will collectively receive approximately $9.5 million in connection with their outstanding Company RSUs.

34.     Shutterfly's executives similarly stand to benefit from the Proposed Transaction. Each of Shutterfly's named executive officers' Company Options will accelerate and be converted into cash payments.  In addition, their performance-based share units ("PSUs") and market-based restricted stock units ("MSUs") are subject to partial acceleration and will vest and convert into the right to receive cash payments. Further, defendant O'Hara's RSUs with an approximate value of $3.0 million will accelerate and become vested upon completion of the Proposed Transaction.  The

following tables set forth the value of the Company Options, RSUs, PSUs, and MSUs the Company's executive officers stand to receive:

| Named Executive Officer | Unvested Company RSUs (Excluding Unearned PSUs and MSUs) (*) (#) | Earned Unvested Company PSUs and MSUs (**) (#) | Value of Unvested Company RSUs and Earned MSUs and PSUs ($) | Unvested Company Options (#) | Value of Unvested Company Options ($) | Total Value of Unvested Company Equity Awards ($) |
|---|---|---|---|---|---|---|
| Ryan O'Hara | 130,149 | 103,981 | 11,940,630 | — | — | 11,940,630 |
| Satish Menon | 40,964 | 33,333 | 3,789,147 | 26,357 | 165,856 | 3,955,003 |
| Maureen Mericle | 38,655 | — | 1,971,405 | — | — | 1,971,405 |
| Michael Pope | 77,110 | 56,035 | 6,790,395 | 32,822 | 205,138 | 6,995,533 |
| Christopher North | 15,897 | — | 810,747 | 194,792 | 525,938 | 1,336,685 |
| Michael Meek | — | 1,217 | 62,067 | — | — | 62,067 |

\* Amounts in this column include the number of shares underlying Company PSUs and Company MSUs earned prior to June 30, 2019 (the assumed date of the Merger), that are subject only to time-based vesting.

\*\* Amounts in this column represent the number of shares underlying Company PSUs and Company MSUs that will be deemed earned upon the Merger, and subject to acceleration as described above.

**The Proxy Statement Contains Material Misstatements and Omissions**

35.  The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Shutterfly's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

36.  Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Shutterfly's financial projections, relied upon by the Company's financial advisor, Morgan Stanley, in its valuation analyses; (ii) the valuation analyses prepared by Morgan Stanley in connection with the rendering of its fairness opinion; and (iii) Company insiders' potential conflicts of interest. Accordingly, Shutterfly stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Shutterfly's Financial Projections*

37. The Proxy Statement omits material information regarding the Company's financial projections provided by Shutterfly management and relied upon by Morgan Stanley for its analyses.

38. The Proxy Statement sets forth that at the April 23, 2019 Board meeting, the Board, members of Shutterfly senior management and representatives of Morgan Stanley reviewed Shutterfly's financial projections through 2021 under both a base case scenario ("Management Case") and a sensitivity case scenario ("Sensitivity Case," and together with the Management Case, the "Management Projections") with the Board directing representatives of Morgan Stanley to utilize both the Management Case projections and the Sensitivity Case projections in connection with its financial analyses.

39. The Proxy Statement misleads the Company's stockholders as to the reasonableness and reliability of the Management Projections. With respect to the Management Projections, the Proxy Statement states that the Board considered:

> **certain forecasts prepared by and on bases reflecting the best currently available estimates and judgements of our senior management**, including both the "base case" and "sensitivity case" projections, which projections (the "Management Projections") were also made available to representatives of Morgan Stanley for purposes of rendering its fairness opinion to our Board and performing its related financial analyses. . . .

Proxy Statement at 39 (emphasis added). The Proxy Statement further states that:

> In the view of our management, the [Management Projections were] **prepared on a reasonable basis, reflected the best estimates and judgments available to our management at the time and presented, to the best of our management's knowledge and belief, the expected course of action and our expected future financial performance as of the date such information was prepared**.

*Id*. at 53 (emphasis added).

40. These statements give Shutterfly stockholders at least two false impressions. First, these statements assert that both the "Management Case" and "Sensitivity Case" projections reflected the best "estimates and judgments available to [Shutterfly's] management at the time and presented, to the best of [Shutterfly] management's knowledge and belief, the expected course of action and

- 10 -
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

[Shutterfly's] expected future financial performance as of the date such information was prepared."
*See Id.* This is impossible given the immense discrepancy in the projection sets. A comparison of the Management Case and Sensitivity Case projections, including the respective unlevered free cash flow ("UFCF") projections, reveals two drastically different pictures of Shutterfly's future prospects ($ in millions):

### Management Case

| | 2019E | 2020E | 2021E | 2022E | 2023E | 2024E |
|---|---|---|---|---|---|---|
| | | | (in millions) | | | |
| Consumer revenue | $1,001 | $1,041 | $1,093 | $1,126 | $1,149 | $1,160 |
| SBS revenue | 252 | 277 | 304 | 320 | 336 | 352 |
| Lifetouch revenue | 934 | 952 | 981 | 1,010 | 1,030 | 1,041 |
| Lifetouch revenue synergies(1) | 33 | 76 | 90 | 100 | 109 | 115 |
| Total revenue | 2,219 | 2,346 | 2,469 | 2,556 | 2,624 | 2,668 |
| Adjusted EBITDA(2) | 345 | 415 | 465 | 477 | 473 | 468 |
| Adjusted EBITDA minus capital expenditures | 220 | 305 | 355 | 357 | 348 | 338 |

### Projected Unlevered Free Cash Flow—Management Case

| | 2019E (Q2-Q4) | 2020E | 2021E | 2022E | 2023E | 2024E |
|---|---|---|---|---|---|---|
| | | | (in millions) | | | |
| Revenue | $1,889 | $2,346 | $2,469 | $2,556 | $2,624 | $2,668 |
| Adjusted EBITDA(1) | 388 | 415 | 465 | 477 | 473 | 468 |
| Taxes | (56) | (47) | (59) | (61) | (65) | (65) |
| Capital expenditure and capitalized software | (89) | (110) | (110) | (120) | (125) | (130) |
| Decrease (increase) in net working capital | 141 | (4) | (5) | 4 | 4 | 3 |
| Stock-based compensation | (42) | (54) | (54) | (55) | (57) | (58) |
| Unlevered free cash flow(2) | 343 | 199 | 237 | 245 | 230 | 218 |

### Management Sensitivity Case

| | 2019E | 2020E | 2021E | 2022E | 2023E | 2024E |
|---|---|---|---|---|---|---|
| | | | (in millions) | | | |
| Consumer revenue | $ 962 | $ 962 | $ 962 | $ 943 | $ 924 | $ 905 |
| SBS revenue | 252 | 277 | 304 | 320 | 336 | 352 |
| Lifetouch revenue | 932 | 932 | 932 | 913 | 895 | 877 |
| Lifetouch revenue synergies(1) | — | 20 | 30 | 30 | 30 | 30 |
| Total revenue | 2,145 | 2,190 | 2,228 | 2,205 | 2,184 | 2,164 |
| Adjusted EBITDA(2) | 324 | 352 | 385 | 377 | 365 | 353 |
| Adjusted EBITDA minus capital expenditures | 199 | 242 | 275 | 267 | 255 | 243 |

### Projected Unlevered Free Cash Flow—Sensitivity Case

| | 2019E (Q2-Q4) | 2020E | 2021E | 2022E | 2023E | 2024E |
|---|---|---|---|---|---|---|
| | | | (in millions) | | | |
| Revenue | $1,815 | $2,190 | $2,228 | $2,205 | $2,184 | $2,164 |
| Adjusted EBITDA(1) | 366 | 352 | 385 | 377 | 365 | 353 |
| Taxes | (50) | (31) | (39) | (38) | (40) | (39) |
| Capital expenditure and capitalized software | (89) | (110) | (110) | (110) | (110) | (110) |
| Decrease (increase) in net working capital | 136 | (10) | (10) | (3) | (3) | (2) |
| Stock-based compensation | (42) | (54) | (54) | (55) | (57) | (58) |
| Unlevered free cash flow(2) | 322 | 146 | 172 | 171 | 155 | 144 |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

41.     The implied values resulting from Morgan Stanley's *Discounted Cash Flow Analysis* ("DCF") of Shutterfly further highlight the two drastically different pictures of Shutterfly's future prospects under the Management Case and Sensitivity Case as set forth below:

| | Implied Value Per Share of Shutterfly Common Stock ($) |
|---|---|
| Management Case | 55.89 – 90.54 |
| Management Sensitivity Case | 29.83 – 47.99 |

*Id*. at 49.  Notably, the Merger Consideration of $51.00 falls completely below the implied range of values, $55.89 - $90.54, Morgan Stanley calculated using the Management Case projections.

42.     The Proxy Statement further fails to adequately disclose the assumptions underlying the Sensitivity Case.  With respect to the Sensitivity Case, the Proxy Statement sets forth:

> [Shutterfly] management also prepared "sensitivity case" forecasts that represented a downside view that gave greater weighting to the risk and challenges facing Shutterfly as an independent company in order to facilitate scenario planning discussions with our Board at its meeting on May 29, 2019. ***The sensitivity case forecast assumed declines in our Consumer and Lifetouch revenue beginning in 2021, reflecting more intense competition in our Consumer business than we presently anticipate, and reduced demand for our Lifetouch products due to lower participation among schools than we presently anticipate***.

*Id*. at 55 (emphasis added).  These statements are false and/or misleading as the Sensitivity Case forecast did not solely assume declines in Shutterfly's Consumer and Lifetouch revenue beginning in 2021.  As shown in the Sensitivity Case table set forth above, Consumer and Lifetouch revenue for the Sensitivity Case is lower in both 2019 and 2020 as compared to the Management Case.

43.     The Proxy Statement must correct the false and misleading statements concerning the Sensitivity Case and disclose the reasons the Sensitivity Case has lower forecasted revenues for 2019 and 2020.

44.     The Proxy Statement also fails to and must disclose (i) who requested that Shutterfly management create a Sensitivity Case; (ii) the reasons for the creation of a Sensitivity Case; (iii) when

the request to create a Sensitivity Case was made; and (iv) why the Board directed Morgan Stanley to utilize both the Management Case projections and the Sensitivity Case projections in connection with its financial analysis.

45. The omission of this information renders the statements in the "Background of the Merger" and "Financial Projections" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Morgan Stanley's Financial Analyses**

46. The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Shutterfly's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Shutterfly's stockholders.

47. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and the assumptions underlying the discount rate range of 7.3% to 8.6%; (ii) the terminal values for the Company; and (iii) the outstanding shares of Shutterfly common stock on a fully-diluted basis, as provided by Company management.

48. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) Morgan Stanley's basis for applying the range of aggregate value to Adjusted EBITDA multiples and the range of stock price to free cash flow per share multiples used in the analysis; (ii) net debt; and (iii) quantification of the inputs and assumptions underlying the discount rate of 10.0%.

49. With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Morgan Stanley.

50. With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose: (i) the "Street Case" projections; and (ii) the estimated outstanding shares of the Company's common stock on a fully diluted basis, as provided by Company management.

51. With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose the price targets for Shutterfly common stock and the sources thereof.

52. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

53. The omission of this information renders the statements in the "Fairness Opinion of Morgan Stanley & Co. LLC" and "Financial Projections" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

54. The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Shutterfly insiders.

55. In the June 10, 2019 press release announcing the Proposed Transaction, David Sambur, Senior Partner at Apollo, is quoted as stating, "[w]e are excited to work with Shutterfly's leadership and talented team of dedicated employees to grow each of the businesses and further enhance customer relationships across both Shutterfly and Lifetouch." According to the Proxy Statement:

> As of the date of this proxy statement none of our executive officers has entered into, or committed to enter to into, any arrangements or other understandings regarding

> continued employment with or service to Apollo or its subsidiaries or affiliates following the Merger. While it is possible that Apollo may enter into such arrangements in the future, at this time there can be no assurance that Apollo will enter into any employment or other arrangements with our management, or if so, of the terms and conditions of any such arrangements.

*Id.* at 61. Yet, the Proxy Statement further fails to disclose whether any of Apollo's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

56. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

58. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

59. Plaintiff repeats all previous allegations as if set forth in full.

44. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. The Proxy Statement misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

**COUNT II**

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Shutterfly within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Shutterfly and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Shutterfly, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Shutterfly stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 5, 2019

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
       -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato (SBN 319767)
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

*Attorneys for Plaintiff*